# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* :

JUAN F., ET AL.                                      :

                                                             : Civil Action No. 2-89-859 (AHN)

                    Plaintiffs,                         :

                                                             :

v.                                                             :

                                                             :

JOHN G. ROWLAND                              : January 8, 2004

                                                             :

                    Defendants.                      :

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>MEMORANDUM OF LAW<br>IN SUPPORT OF DEFENDANTS'<br>MOTION FOR RECONSIDERATION OF COURT ORDER</u>

The Defendants submit this Memorandum of Law in support of their Motion for Reconsideration of the Order, proposed by D. Ray Sirry, *Juan F.* Court Monitor (the "Monitor"), and adopted and ordered by the court (Nevas, J.) on December 23, 2003 (the "December 23 Order"). The December 23 Order was accompanied by an Exit Plan, which Exit Plan was itself authorized by Order No. 447, dated October 7, 2003 (the "October 7 Order"). The Exit Plan affects substantive rights of the Defendants, and its entry as a court order without notice and a hearing deprived the Defendants of the basic rights of Due Process. Moreover, the October 7 Order does

{W1282473}

not provide that the Exit Plan would be entered as a court order, and the Introduction to the Exit Plan contains provisions that exceed the scope of the Exit Plan authorized by the October 7 Order, and a provision that offends the constitution and laws of the State of Connecticut.

I.    **BACKGROUND**

The October 7 Order was entered on the written stipulation of the parties, pursuant to which the Monitor prepared a definitive Exit Plan to achieve specified outcomes.  By its terms, the October 7 Order vacated and replaced the Consent Decree, Manuals, and the February 19, 2002 Transition/Exit Plan, which had governed the case to that point.  The October 7 Order states, the "Monitor's final decision on the outcome measures, standards and Exit Plan shall be binding on all the parties." The Exit Plan was to contain the standards and outcomes the achievement of which would terminate the court's jurisdiction over this action.  The outcome measures and standards themselves contained in the Exit Plan are within the scope of the Exit Plan authorized by the October 7 Order and are not subject to review.

The Monitor submitted a first draft of the Exit Plan, which contained provisions that were beyond the scope of the Exit Plan contained in the October 7 order.  Defendants objected to those provisions, and the Monitor issued a new draft.

The Monitor removed most of the provisions to which defendants had objected as beyond the scope of the Exit Plan in the second draft of the Exit Plan.   The Introduction section of the final draft of the Exit Plan added one provision for the first time:  Paragraph 7.

Defendants had an opportunity to offer comments and suggestions concerning the two drafts of the Exit Plan.  Neither of those two drafts contained the provision that now appears as paragraph 7 of the Introduction to the Exit Plan that was ordered by the court.

The Monitor submitted the Exit Plan to the court as an attachment to the proposed December 23 Order with a request that the court "ADOPT AND SO ORDER it."  (Capitalization in the original.)  The defendants were not provided with notice that the Exit Plan was to be ordered by the court, or with an opportunity to be heard with respect to the entry of the Exit Plan as a court order, or in any respect regarding paragraph 7 of the Introduction.  The court adopted and ordered the Exit Plan, thus entering the Exit Plan as a court order.  For the reasons set forth below, the Defendants request the court to reconsider its adoption of the Exit Plan as an order of the court, and to provide them with an opportunity to be heard as to why the standards

and outcome measures contained in the Exit Plan should remain in full force and effect, but should not be ordered by the court.

## II.    LEGAL STANDARD

"[T]he function of a motion for reconsideration is to present the court with an opportunity to correct manifest errors of law or fact…."  Hock v. Thipedeau, 245 F. Supp. 2d 451, 453 (D. Conn. 2003); Philbrick v. Univ. of Conn., 51 F. Supp. 2d 164, 165 (D. Conn. 1999).  The moving party must be able to "point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

## III.    LAW AND ARGUMENT

**A.    THE DECEMBER 23 ORDER WAS ENTERED WITHOUT NOTICE AND OPPORTUNITY FOR THE DEFENDANTS TO BE HEARD; THE DEFENDANTS WERE THEREBY DEPRIVED OF A MOST BASIC RIGHT OF DUE PROCESS**

As discussed more fully in Section C. below, the October 7 Order, entered by stipulation of the parties, does not provide for the entry of the Exit Plan as a court order.  The October 7 Order affects the parties' substantive rights by imposing certain obligations upon the parties, particularly the Defendants, non-performance of which would reasonably entail penalties.  Entry of the December 23 Order altered the nature

{W1282473}                                          4

of those obligations and the potential penalties, without the agreement of the defendants. As a self-executing document, remedies for potential non-compliance with the Exit Plan would not include a finding of contempt. The entry of the Exit Plan as a court order, however, materially changes the remedies potentially applicable for non-compliance, without the agreement of the defendants.

The October 7 Order, which governs the development and implementation of the Exit Plan, nowhere states or implies that the Exit Plan will be adopted and entered as a court order. The Defendants never agreed that the Exit Plan would be entered as an order of the court. The court entered the December 23 Order on the Monitor's proposal. The parties, including the Defendants, were afforded no opportunity to be heard on the entry of an order that affected their substantive rights.

It is most basic to the right to Due Process that a person be given notice and an opportunity to be heard before such person's substantive rights can be affected by a governmental act. This tenet holds true even if the court finds that the December 23 Order was correctly entered from a substantive perspective. Indeed, "[i]t is black-letter law that due process guarantees a fair hearing, not a legally correct outcome." Conopco v. Roll Intern., 231 F.3d 82 (2nd Cir. 2000), citing Collins v. City of Harker Heights, Texas, 503 U.S. 115, 129 (1992) (emphasis in original).

Accordingly, the court should reconsider the December 23 Order in light of its effects on the rights of the defendants, and provide defendants with an opportunity to be heard with respect to the proposed order.

**B.**     **THE OCTOBER 7 ORDER CONTROLS THIS CASE AND THIS PROCEEDING.**

The October 7 Order was the product of a stipulation of the parties.  As such, it is comparable to a contract, and contract laws apply to it.  See e.g. Geller v. Branic Int'l Realty Corp., 212 F.3d 734, 737 (2d Cir. 2000); Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999).  Therefore, where an order is entered on stipulation of the parties, it is an inviolable principle that "regardless of what the district court had in mind at the time it signed the [order], … the [o]rder must be interpreted as it[s] plain meaning dictates."  City of Hartford v. Chase, 942 F.2d 130, 135 (2d Cir. 1991).

The October 7 Order is, therefore, the law of this case and of this proceeding. Acts of the parties, including the Monitor, pursuant to the October 7 Order must be measured against the express terms contained within the "four corners" of that Order. With respect to an order entered in accordance with the parties' stipulation, the court also "accepts some obligations."  Geller, 212 F.3d at 737 (holding that on "so order[ing]" a stipulated settlement agreeing to sealing certain files, the court, though

not a party to the stipulation, undertook, and was required, to seal such files).  Thus,

the Exit Plan, its creation, its implementation, and its enforcement are all governed by

the October 7 Order and by no other authority.

**C.      THE OCTOBER 7 ORDER DOES NOT PROVIDE FOR THE ENTRY
         OF THE EXIT PLAN AS AN ORDER OF THE COURT.**

        Paragraph 2 of the October 7 Order provides that the Monitor "shall develop a

definitive Exit Plan and submit it to plaintiffs and defendants, affording them a

meaningful opportunity for input.  The Monitor's final decision on the outcome

measures, standards and Exit Plan shall be binding on all the parties."  Thus, by its

terms, the Exit Plan is self-executing, and it is binding on the parties.  The October 7

Order neither requires nor permits that the court enter it as an order.

        The October 7 Order states further that the "Exit Plan shall terminate on

November 1, 2006, and the jurisdiction of the Court over this action shall terminate on

that date, *unless Defendants have not complied with the Exit Plan*" (emphasis added).

The court maintains jurisdiction over this action until the termination date.

        Furthermore, Paragraph 5 of the October 7 Order reads in its entirety:

> 5.      If the Monitor becomes unwilling or unable to
> continue as the monitor, this Stipulation and the
> Order entered thereon shall become null and
> void.  The Exit Plan referred to above shall
> continue to be implemented and shall be in full

force and effect unless otherwise ordered by the Court.

The wording clearly distinguishes the stipulation underlying the October 7 Order, which stipulation was intended to, and did, culminate in a court order, from the Exit Plan, about which no court order is mentioned. Rather, the Exit Plan is, and will remain, in full force irrespective of a court order. The October 7 Order contemplates no court order with regard to the Exit Plan **except** to nullify it.

Since, however, the December 23 Order was entered on a proposal by the Monitor, defendants did not have an opportunity to submit briefs or to present arguments for or against the adoption of the Exit Plan as a court order. Presented with the law concerning stipulated orders, with the arguments regarding the intended force of the Exit Plan, and with the plain language of Paragraph 5 of the October 7 Order, defendants submit that the court might have reached a different conclusion as to the December 23 Order. Accordingly, the court should reconsider the December 23 Order.

**D.    THE EXIT PLAN CONTAINS PROVISIONS THAT EXCEED THE SCOPE AUTHORIZED BY THE OCTOBER 7 ORDER.**

Paragraph 7 of the Introduction to the Exit Plan states that the "Defendants shall provide funding and other resources necessary to implement the Exit Plan." The Monitor submitted two drafts of the Exit Plan to defendants prior to the submission of the Exit Plan to the court that was adopted in the December 23 Order. The defendants submitted extensive comments to both drafts. Neither draft, however, contained the final Exit Plan Introduction provision regarding funding, quoted above. The effect of this provision may be to require the defendants, both the Commissioner of the Department of Children and Families, and the Governor of the State of Connecticut, to appropriate state funds for the purpose of "implementing" the Exit Plan.[1] The appropriation of state funds is a state function within the power to legislate, a power that the Connecticut "constitution has committed solely to the General Assembly … to finance the operation of the state and its programs." Bridgeport v. Agostinelli, 163 Conn. 537, 544 (1972); see also Connecticut Constitution, Art. 3, §§ 1, 18; Univ. of Conn. Chapter, AAUP v. Governor, 200 Conn. 386, 395 (1986).

---

[1] This provision of the Exit Plan could also place state government in the position of violating the constitutional cap on expenditures ratified by the electorate in 1992.

Conn. Gen. Stat. § 2-33, which implements Connecticut Constitution, Art. 3, § 1, governs the Connecticut legislature's power to "make appropriations."  Conn. Gen. Stat. §4-69(4) defines an appropriation as "an authorization *by the General Assembly* to make expenditures and incur liabilities for specific purposes" (emphasis added).

The funding provision contained in the Exit Plan ordered by the court is void for illegality to the extent that the Commissioner and the Governor would be expected or required to appropriate state funds.  Simply put, the executive branch of the State of Connecticut is constitutionally and statutorily precluded from appropriating money. Therefore, presentation of arguments and data concerning the effects of such a court order on the workings of government under Connecticut law "might reasonably be expected to alter the conclusion reached by the court," Hock v. Thipedeau, 245 F. Supp. 2d 451, 453 (D. Conn. 2003), in "ordering" the Exit Plan.  A concern for federalism would warrant at the very least an opportunity to be heard on so consequential a matter.

Accordingly, the court should reconsider the December 23 Order, and afford the defendants an opportunity to present evidence and argument as to why the Exit Plan should not be entered as an order of the court, and as to why the provisions of the

Introduction to the Exit Plan exceed the scope of the October 7 Order, and are otherwise unenforceable.

**IV.**    <u>**CONCLUSION**</u>

WHEREFORE, the Defendants respectfully request that the court to grant their Motion for Reconsideration, and permit them an opportunity to be heard with respect to the matters asserted herein.

RESPECTFULLY SUBMITTED,
THE DEFENDANTS,


BY:    /s/ Ann H. Rubin_____
Ann H. Rubin
FOR:  CARMODY & TORRANCE LLP
195 Church Street; 18th Floor
P.O. Box 1950
New Haven, CT 06509-1950
Tele: (203) 777-5501
Fax:  (203) 784-3199
arubin@carmodylaw.com
Federal Bar No. ct04486
Their Attorneys

## **CERTIFICATION**

This will certify that the foregoing was mailed, postage prepaid, on the above date, to the following:

D. Ray Sirry
Juan F. Court Monitor
300 Church Street
4th Floor
Wallingford, CT 06492

Martha Stone, Esq.
Center for Children's Advocacy, Inc.
University of Connecticut School of Law
65 Elizabeth Street
Hartford, CT  06105

David Atkins, Esq.
Zeldes, Needle & Cooper
1000 Lafayette Boulevard
P.O. Box 1740
Bridgeport, CT  06601-1740

Ira P. Lustbader, Esq.
Children's Rights, Inc.
404 Park Avenue South
New York, NY  10016


_____
Ann H. Rubin

{W1282473}                                     12