UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------------------------------------x
JUAN F., et al.,                            :
                        Plaintiffs,         :
                                            :
v.                                          :      CIVIL NO. H89-859 (AHN)
                                            :
M. JODI RELL, et al.,                       :
                                            :      July 7, 2005
                        Defendants.         :
-----------------------------------------------------------x
```

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPROVAL OF ADDITIONAL CLASS COUNSEL

Plaintiffs respectfully submit this Memorandum of Law in Support of their Motion for an Order appointing Steven M. Frederick as Counsel for the *Juan F.* class and attorneys at Children's Rights as Lead Counsel for the *Juan F.* class.

As the Court is aware, Attorney Martha Stone has submitted a motion seeking to withdraw as counsel for the *Juan F.* class (*see* DKT # 484). Should the Court approve that motion, remaining class counsel would be attorneys from Children's Rights in New York City, who have been admitted to practice in this Court as visiting attorneys under Local Rule 83.1(d). While Local Rule 83.1(c) does not strictly require the appointment of local counsel, but merely requires a visiting attorney to designate a local attorney for service of papers, the undersigned attorneys submit that it is in the best interests of the *Juan F.* class for Mr. Frederick to be appointed as Counsel for the class.[1] Attorney Frederick has already filed a Notice of Appearance in this matter.

---

[1] Pursuant to an agreement between the attorneys at Children's Rights and Attorney Frederick, Attorneys Lowry, Lustbader and Pitchal at Children's Rights will serve as Lead Counsel.

1

Federal Rule of Civil Procedure 23(g), which became effective on December 1, 2003, provides explicit authority to the Court to select counsel for a certified class.[2] *See* Fed. R. Civ. P. 23(g). In appointing class counsel, the Court assesses the work counsel has done in identifying or investigating potential claims in the action[3]; counsel's experience in handling class actions, complex litigation, and claims of the type asserted; counsel's knowledge of the applicable law; the resources counsel will commit to representing the class; and any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. *Id.*; *see also In re Luxottica Group, S.P.A. Securities Litigation*, No. 01-CV-285, 2004 WL 2370650 at *4 (E.D.N.Y. Oct. 22, 2004) (annexed hereto as Exhibit A).

Steven Frederick amply meets all the requirements of Rule 23(g) and would be an excellent representative for the *Juan F.* class. Mr. Frederick graduated from Tufts University in 1986 (*magna cum laude*), where he was elected to *phi beta kappa*, and received his J.D. from New York University School of Law in 1989, where he was a moot court advocacy award recipient. He joined Wofsey, Rosen, Kweskin & Kuriansky, LLP ("Wofsey, Rosen") in 1991 and became a partner in 1998. He specializes in civil litigation, and has significant experience in handling complex litigation in both state and federal courts, as well as in mediations and arbitrations. He has also successfully argued numerous appeals before both state and federal appellate courts. Mr. Frederick has a varied practice which includes the prosecution and defense of civil rights cases, discrimination cases, and

---

[2] Even before the enactment of Rule 23(g), it was long understood that the District Court had the authority to appoint plaintiffs' counsel – including additional counsel at later points in the litigation – in class actions. *See, e.g., U.S. Trust Co. Of N.ew York*, 163 F.R.D. 409, 422-23 (S.D.N.Y. 1995); *Cullen v. New York State Civil Service Comm.*, 435 F.Supp. 546, 563-64 (E.D.N.Y.), *appeal dismissed*, 566 F.2d 846 (2d. Cir. 1977).

[3] Of course, since the class in this matter was long ago certified, and the case long ago settled with a consent decree, the investigation requirement is inapplicable here.

commercial disputes of numerous varieties. Mr. Frederick has also practiced family law and has represented several clients in cases dealing with the Department of Children and Families. He is familiar with the law at issue in this case.

The *Juan F.* class will also continue to be represented by Marcia Robinson Lowry and other attorneys at Children's Rights, Ira P. Lustbader and Erik S. Pitchal. Attorney Lowry has been an attorney litigating child welfare cases since 1970. For six years, she was Director of the Children's Rights Project of the New York Civil Liberties Union; for 16 years she was director of the Children's Rights Project of the American Civil Liberties Union; and since 1995 she has been Executive Director of Children's Rights, an organization she founded. She has been lead counsel in more than twelve class action lawsuits representing hundreds of thousands of children. Co-lead counsel since 1989, she supervises Attorney Lustbader and Attorney Pitchal in the *Juan F.* litigation, which is one of six cases in which attorneys at Children's Rights are actively involved in monitoring the compliance of state child welfare agencies with detailed consent decrees or remedial orders.

In light of the fact that Mr. Frederick meets the necessary criteria to be appointed by this Court as class counsel, and considering that, lacking class counsel in Connecticut the attorneys at Children's Rights would otherwise designate Mr. Frederick pursuant to Local Rule 83.1(c) for service of papers, it is respectfully requested that the Court appoint Mr. Frederick as Class Counsel in this matter.

RESPECTFULLY SUBMITTED,
PLAINTIFFS

BY: _____
Marcia Robinson Lowry
Federal Bar No. ct04688
mlowry@childrensrights.org
Ira P. Lustbader
Federal Bar No. ct23551
ilustbader@childrensrights.org
Erik S. Pitchal
Federal Bar No. ct20513
epitchal@childrensrights.org
CHILDREN'S RIGHTS
404 Park Ave. South, 11th Fl.
New York, NY 10016
Tel 212-683-2210
Fax 212-683-4015


THEIR ATTORNEYS

—and—

_____
Steven M. Frederick
Federal Bar No. ct08743
sfrederick@wrkk.com
Wofsey Rosen Kweskin & Kuriansky LLP
600 Summer Street
Stamford, CT 06901-1490
Tel 203-327-2300
Fax 203-967-9273

Not Reported in F.Supp.2d
2004 WL 2370650 (E.D.N.Y.), Fed. Sec. L. Rep. P 93,028
(Cite as: 2004 WL 2370650 (E.D.N.Y.))

Page 41

Motions, Pleadings and Filings

United States District Court,
E.D. New York.
In re LUXOTTICA GROUP, S.P.A. SECURITIES LITIGATION.
No. 01-CV-285.

Oct. 22, 2004.

Wolf, Haldenstein, Adler, Freeman & Herz LLP, by David L. Wales, Esq., Daniel Krasner, Esq., Matthew M. Guiney, Esq., New York, NY, for Plaintiff Greenway Partners, L.P.

Winston & Strawn LLP, by Eric M. Nelson, Esq., Joseph A. Dibenedetto, Esq., New York, NY, for Defendants Luxottica Group, S.p .A., Shade Acquisition and Leonardo Del Vecchio.

Proskauer Rose LLP, by Stefanie S. Kraus, Esq., David M. Lederkramer, Esq., New York, NY, for Defendant James N. Hauslein.

Orrick, Herrington & Sutcliffe LLP, by Michael D. Torpey, Esq., New York, NY, for Defendants Sunglass Hut Directors.

MEMORANDUM & ORDER

JACK B. WEINSTEIN, Senior United States District Judge.

I. *Introduction*
*1 Plaintiffs, investors in Sunglass Hut, sued Luxottica Group, Leonardo Del Vecchio, Shade Acquisition, James N. Hauslein, and the directors of Sunglass Hut for violations of (i) the Best-Price provision of the Williams Act, Section 14(d) of the Securities Exchange Act (the "Act"); (ii) Section 10(b) of the Act's prohibition against false and misleading statements; and (iii) state law fiduciary duty obligations.

Lead plaintiff, Greenway Partners, L.P. ("Greenway"), moves for approval of its retained counsel, Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein"), pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). 15 U.S.C. § 78u-4(3)(B)(v). Greenway was one of Sunglass Hut's largest shareholders.

The motion of Greenway is granted, subject to the court's exercising its power to strike portions of the retainer agreement that are against public policy. With these changes in the Greenway-Wolf Haldenstein relationship, Wolf Haldenstein is capable of meeting its fiduciary obligations to all shareholders.

II. *Facts*
A. *Securities and State Law Claims*

Luxottica Group, S.p.A. ("Luxottica") is an Italian manufacturer and distributor of eyeglasses and sunglasses. Leonardo Del Vecchio is the controlling shareholder of Luxottica. Shade Acquisition is a Florida corporation formed for the purpose of making a tender offer for the shares of Sunglass Hut, a Florida sunglass retailer. James N. Hauslein was Sunglass Hut's Chairman of the Board from 1991 until the merger with Luxottica. He became Chief Executive Officer ("CEO") of Sunglass Hut in January of 2001. As of February of 2001, he held 1,768,311 (4.3%) of Sunglass Hut's outstanding shares.

In January of 2001, shortly after Haulsein became CEO of Sunglass Hut, Luxottica made a tender offer of $9.10 per share. The offer was rejected. In February of 2001, Luxottica increased its offer to $10.50 per share, and later that month, raised its offer to $11.25 per share. Plaintiffs allege that Luxottica indicated to Haulsein that it would increase the tender offer further if he entered into a non-competition and consulting agreement, effective upon the consummation of the merger. The consulting agreement provides that Luxottica will pay Haulsein $15 million in sixty monthly installments of $250,000. For point of comparison, Haulsein's base annual salary at Sunglass Hut was $375,000.

In late February 2001, Luxottica indicated to Haulsein that it would increase the tender offer to $11.50 per share if the transaction were approved quickly. That same evening, Haulsein informed Sunglass Hut's board of directors of the offer and the consulting agreement. He supported the offer. The offer and merger were then approved by unanimous vote of Sunglass Hut's directors. Luxottica's directors approved the offer and merger the following day.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 2370650, *1 (E.D.N.Y.))

Page 42

On March 5, 2001, Shade (the acquisition vehicle) made the tender offer to purchase all shares of Sunglass Hut's common stock for $11.50. Sunglass Hut's Schedule 14D-9 filing with the Securities and Exchange Commission indicated that the board of directors relied on Haulsein's support for the merger.

*2 On March 30, 2001, Luxottica accepted 97.1% (including Haulsein's share) of the outstanding shares of Sunglass Hut. Soon thereafter it purchased the remaining shares.

Defendants' motion to dismiss plaintiffs' claims under the Best-Price provision of the Act and state fiduciary duty laws has already been denied. *In re Luxottica Group S.p.A., Sec. Litig.*, 293 F.Supp.2d 224 (E.D.N.Y.2003). A motion to dismiss was granted as to plaintiffs' claim under section 10(b) of the Act, prohibiting false and misleading statements. *Id.*

B. *Appointment of Lead Counsel*

The complaint was filed on May 5, 2001. In an order dated October 1, 2001, the magistrate judge appointed Greenway as sole lead plaintiff and approved Greenway's selection, Goodkind Labaton Rudoff & Sucharow LLP ("Goodkind"), as sole lead counsel. Years after the commencement of the litigation, it was disclosed that Goodkind had a possible conflict of interest. Goodkind represents an investment banker at Rothschild, Rene-Pierre Azria, in an unrelated estate matter. Mr. Azria was arguably involved in the instant case in his capacity at Rothschild, the investment bank used by Luxottica in connection with the tender offer. He may be a key witness.

At a June 15, 2004 hearing the court disqualified Goodkind for an apparent conflict of interest.

In the wake of the disqualification of Goodkind, Greenway interviewed three law firms for the role of substitute lead counsel, eventually selecting Wolf Haldenstein. Greenway then retained Wolf Haldenstein for this litigation on a contingent fee basis.

The retainer agreement provides that Greenway will have no responsibility to repay expenses advanced by Wolf Haldenstein and that Greenway's prior approval is required for any settlement. Defendants argue that if Greenway controls the litigation, settlement of the entire action might impermissibly depend upon Greenway's own needs, including its consideration of the "high-water mark" that is used to calculate its general partners' fees. Defendants contend that, given these conditions, Wolf Haldenstein cannot fairly represent the putative class of Sunglass Hut's former shareholders.

The relevant papers of Greenway and Wolf Haldenstein; the testimony of Greenway's senior managing director at an evidentiary hearing; and the factually-based assurances of Wolf Haldenstein refute defendants' contentions. For the reasons stated orally on the record, there is no substantiated basis to credit the concerns of the defendants that Wolf Haldenstein can not properly represent a class consisting of all Sunglass Hut's former shareholders.

III. *Law*

A court's control over securities cases, particularly where a possible class action is implicated, has become hedged with complex statutes and rules controlling the appointment of lead counsel. *See, e.g.,* 15 U.S.C. § 78u-4. Imposed are requirements that the purity of motives and execution of responsibilities of counsel be ensured.

A. *Approval of Lead Counsel Under 15 U.S.C. § 78u-4*

*3 Section 78u-4(3)(B)(v) of the PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(3)(B)(v). As one court put the matter:

> This language makes two things clear. First, the lead plaintiff's right to select and retain counsel is not absolute--the court retains the power and the duty to supervise counsel selection and counsel retention. But second, and just as importantly, the power to "select and retain" lead counsel belongs, at least in the first instance, to the lead plaintiff, and the court's role is confined to deciding whether to "approv[e]" that choice.

*In re Warnaco Group, Inc., Sec. Litig.*, No. 00 Civ. 6266, 2004 WL 1574690, at *1 (S.D.N.Y. July 13, 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir.2001)); *see also In re Cendant Corp. Litig.*, 264 F.3d at 276 ("Instead, we think that the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel

selection and counsel retention."). *But see In re Lucent Techs., Inc. Sec. Litig.,* 221 F.Supp.2d 472, 488 (D.N.J.2001) (declining to approve lead plaintiff's proposed lead counsel).

Proposed lead counsel must demonstrate that it is capable of representing all plaintiffs in a fair, competent and efficient manner. *See, e.g., Rozenboom v. Van Der Moolen Holding, N.V.,* No. 03 Civ. 8284, 2004 WL 816440, at *6 (S.D.N.Y. Apr. 14, 2004) ("In addition, the proposed co-lead counsel appear highly qualified, experienced, and able to conduct this litigation in a professional manner."); *Funke v. Life Fin. Corp.,* No. 99 Civ. 11877, 2003 WL 194204, at *5 (S.D.N.Y. Jan. 28, 2003) ("Having reviewed the resumes of the two firms, ... the court is satisfied that they are sufficiently experienced and competent to undertake this litigation."). A proposed fee arrangement may be critical to deciding whether to approve proposed counsel. *See, e.g., Taft v. Ackermans,* No. 02 Civ. 7951, 2003 WL 402789, at *1 n. 1 (S.D.N.Y. Feb. 20, 2003) ("[I]f the proposed fee agreement was outside the bounds of reason, that would certainly be evidence that the proposed lead counsel would not fairly represent the class."); *In re Cree, Inc., Sec. Litig.,* 219 F.R.D. 369, 373 (M.D.N.C.2003) (expressing concern with hourly rates of proposed lead counsel).

Since public confidence in the fairness of public securities markets is at stake in these litigations, the court should be open to all arguments of possible plaintiffs, defendants and friends of the court on the issue of appropriate counsel. "In that spirit, and for lack of any clear statutory language in the PSLRA precluding or limiting the right of defendants to be heard on the issue of lead plaintiff and lead counsel designations, defendants have standing to be heard during the appointment process." *Pirelli Armstrong Tire Corp. v. LaBranche & Co.,* No. 03 Civ. 8264, 2004 WL 1179311, at *9 (S.D.N.Y. May 27, 2004).

*4 Care in approving lead counsel is particularly important to avoid future claims that a settlement is unfair or that representation was inadequate, potentially nullifying the considerable effort by the court and parties in conducting the litigation. Defendants have an interest in the long-term viability of the disposition of the case. *See Stephenson. v. Dow Chemical Co.,* 273 F.3d 249 (2d Cir.2001) (holding that inadequately-represented claimants can in effect collaterally attack class action settlement), *aff'd in part and vacated in part by* 539 U.S. 111 (2003).

A decision to approve lead counsel is not irreversible. Subsequently-discovered or new facts may warrant modification of prior approval of counsel. Since the PSLRA contemplates the selection of lead plaintiff and lead counsel shortly after the filing of the complaint, a lengthy case may give rise to complications necessitating replacement. *See Flicker v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* Nos. 03-CV-4080, 03-CV-4174, 03-CV-4310, 03-CV-4417, 03-CV-5412 & 03-CV-5550, 2003 WL 22004907, at *1 (S.D.N.Y. Aug. 26, 2003) (stating that the approval of lead counsel was "subject to later modification or revision by the Court"). *Cf. Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 60 (D.Mass.1996) (concluding that its appointment of lead plaintiff "must be without prejudice to the possibility of revisiting that issue in considering a motion for class certification").

B. *Appointment of Class Counsel Under Fed.R.Civ.P. 23(g)*

Unlike the more general provision of the PSLRA, Rule **23(g)** of the **Federal Rules** of Civil Procedure proscribes an exacting standard for appointing class counsel:
(A) Unless a statute provides otherwise, a court that certifies a class must appoint class counsel.
(B) An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.
(C) In appointing class counsel, the court
(i) must consider:
. the work counsel has done in identifying or investigating potential claims in the action,
. counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
. counsel's knowledge of the applicable law, and
. the resources counsel will commit to representing the class;
(ii) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
(iii) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and

(iv) may make further orders in connection with the appointment.

Fed.R.Civ.P. **23(g)**; *see also In re Initial Pub. Offering Sec. Litig.,* Nos. 21 MC 92, 01 Civ. 3857, 01 Civ. 8404, 01 Civ. 7048, 01 Civ. 9417, 01 Civ. 6001 & 01 Civ. 0242, 2004 U.S. Dist. LEXIS 20497, at *69-*70 (S.D.N.Y. Oct. 13, 2004) (discussing Rule **23(g)**); *Noble v. 93 Univ. Place Corp.,* No. 02 Civ. 1803, 2004 WL 944543, at *5, *9 (S.D.N.Y. May 3, 2004) (same).

### IV. *Application of Law to Facts*

*5 Defendants note that this "litigation is presently at the class certification stage;" they argue that Rule 23(g) applies. The reality of an imminent hearing on class certification cannot be disregarded.

Since a class action is contemplated in this securities case, the requirements of both section 78u-4 and Rule 23 should be satisfied. To ignore Rule 23 would be to waste judicial resources and ultimately probably delay disposition. *Cf. In re Cree, Inc., Sec. Litig.,* 219 F.R.D. at 373 (considering Rule 23(g) provisions in appointing lead counsel pursuant to the PSLRA).

Wolf Haldenstein represents that it is a competent law firm with experience in complex securities litigation. Material supplied to the court supports its contentions. Greenway's selection of the firm after interviewing other firms constitutes evidence of a good faith attempt to obtain a firm with appropriate qualifications. *See, e.g., In Cendant Corp. Litig.,* 264 F.3d at 276 (listing as one approval criterion "the process by which the lead plaintiff selected its final choice" of counsel). The court has no reason to doubt the experience and expertise of Wolf Haldenstein.

On the face of the matter the firm meets all the requirements of Rule 23, as well as the PSLRA. The court's inquiry is guided in part by the provision of Rule 23(g), that the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P . 23(g)(1)(C)(ii). Since the original lead counsel has been disqualified for a conflict of interest, a critical task at hand is to discover and to avoid any possibility of actual or potential conflicts of interest. The court must be assured that Goodkind's conflict has not tainted Wolf Haldenstein.

Wolf Haldenstein states that it has "carefully checked to insure that [it] does not have a conflict of interest with any party or significant witness" in the case and that "there is no conflict." Krasner Decl. at ¶ 2. The firm also declares that Goodkind had "*no role whatsoever in Greenway Partners' retention of [it],*" and that Goodkind "*did not recommend Wolf Haldenstein to Greenway Partners.*" *Id.* at ¶ 3 (emphasis in original). While Wolf Haldenstein has not produced any documentary evidence of its internal conflicts check, after its oral inquiry the court is satisfied that the internal check was adequate.

Wolf Haldenstein represents that there is "no agreement of any kind" between it and Goodkind. Nevertheless, the firm also notes that it has "agreed that the Goodkind firm can submit records of its lodestar and expenses." *Id.* at ¶ 4. This is not an apparent contradiction since no agreement to pay is made or approved by the court at this time. *Cf. Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir.1998) ("[T]he addition of new and impartial counsel can cure a conflict of interest even where previous counsel continues to be involved in the case.... Of course, the district court must, as it did in this case, inquire into whether impermissible conflict continues to taint the settlement proceedings.").

*6 No promise of compensation, express or implied, made by Wolf Haldenstein to Goodkind has any independent validity. Upon conclusion of the litigation, any application by Goodkind for compensation will have to be approved by the court.

Defendants also argue that Greenway is not an ideal lead plaintiff. Specifically, defendants claim that Greenway has no incentive to settle the case for any amount less than an undisclosed "high-water mark" of annual profits in its investment portfolio. As already noted, Part II.B., *supra,* the "high-water mark" is the amount of profits on which a fee was previously paid to a general partner of an investment fund; it is used to ensure that no duplicative fee for profits is paid as the portfolio's profits fluctuate. The court's inquiry at the evidentiary hearing and its power to supervise counsel and settlement discussions provide assurance against any such disincentive to settlement.

Defendants claim that it is impermissible to allow the arrangement between Wolf Haldenstein and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Greenway that the latter is not responsible for any litigation expenses. A provision of the New York Code of Professional Responsibility, adopting Disciplinary Rule 5-103(b) of the Model Code, provides that "[a] lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses." N.Y. Comp.Codes R. & Regs. tit. 22, § 1200.22. One court has rejected the application of this provision to a securities class action. *See In re Worldcom, Inc. Sec. Litig.*, 219 F.R.D. 267, 283-84 (S.D.N.Y.2003) ("[R]equiring compliance with [New York Disciplinary Rule] 5-103 and requiring named plaintiffs to pay litigation expenses, even their *pro rata* share of litigation expenses, can have deleterious effects on the federal class action device."). Although defendants' arguments are not dispositive of the issue on this motion, it must be noted that the PSLRA's emphasis on institutional plaintiffs may, in view of the complex relationships within investment institutions, create unforseen difficulties in squaring a lead plaintiff's responsibility to the putative class and its fiduciary obligation to its own investors and partners.

Defendants rely heavily on the argument that the bank in *First Interstate Bank of Nevada, N.A. v. Chapman & Cutler*, 837 F.2d 775 (7th Cir.1988), is analogous to Greenhouse Partners ("Greenhouse"), the general partner of lead plaintiff Greenway. In *First Interstate Bank*, an investor sued the counsel who had handled the securities offering. *Id.* at 776. The investor died during the course of the litigation and the executor of the investor's estate, the bank, was substituted as named plaintiff. *Id.* The bank then sought class certification. *Id.* The bank's motion was denied because, as administrator of the investor's estate, it could not act as class representative. *Id.* at 781. As executor it was only authorized under state law to act for the benefit of the creditors and beneficiaries of the estate. *Id.* Therefore, the court reasoned, the bank could not take on a class representative's conflicting responsibility to act for the benefit of the class of investors, including the possible obligation to spend the estate's assets to pay for litigation costs. *Id.*

*7 *First Interstate Bank* is not relevant. An executor of an estate is not the equivalent of a general partner. A general partner is essentially an investor with control rights, whereas an executor of an estate has a more restricted fiduciary administrative role of making payments and distributions. The bank's powers were based on state law whereas Greenhouse's powers are based on the partnership agreement. As the evidentiary hearing established, Greenhouse has the authority to act as a class representative.

"The ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court ." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir.1995). The provision in the retainer agreement between Greenway and Wolf Haldenstein that absolves Greenway of responsibility for any costs might prevent its interests from being aligned with those of other members of the proposed class.

The portion of the retainer agreement limiting Greenway's responsibility for costs of the litigation is stricken as invalid and against public policy. Pursuant to the provision of the New York Code of Professional Responsibility adopting Disciplinary Rule 5-103(b) of the Model Code, all members of the class--including Greenway--will, subject to the court's control, ultimately be responsible for a pro rata share of the litigation expenses.

The provision of the retainer agreement requiring Greenway's consent for settlement of the action is inconsistent with Wolf Haldenstein's obligation, if appointed class counsel, to all class members. *See Maywalt*, 67 F.3d at 1078 ("The attorneys themselves have an obligation to all of the class members, and 'when a potential conflict arises between the named plaintiff and the rest of the class, the class attorney must not allow decisions on behalf of the class to rest exclusively with the named plaintiffs.' ").

The portion of the retainer agreement between Greenway and Wolf Haldenstein requiring Greenway's consent for settlement of this action is stricken as invalid and against public policy.

The court is satisfied that Greenway's selection of Wolf Haldenstein has not been tainted; that Wolf Haldenstein meets the PSLRA's and Rule 23's requirements for appointment as lead counsel; and that Wolf Haldenstein will conduct the litigation and any settlement negotiations in good faith and in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d **Page 46**
(Cite as: 2004 WL 2370650, *7 (E.D.N.Y.))

protection of the entire putative class's best interests. The court is assured that neither the "high-water mark" arrangement nor any other aspect of intra-Greenway relationships will affect fair prosecution and resolution of the case. There is no reason to believe that possible reimbursement of Goodkind's costs and fees will affect the conduct of the litigation.

### V. *Conclusion*

The provisions of the retainer agreement between Greenway and Wolf Haldenstein limiting Greenway's responsibility for litigation expenses and requiring Greenway's consent for settlement of this action are stricken. No compensation shall be paid to Goodkind without order of the court. Wolf Haldenstein is approved as lead counsel. Goodkind shall promptly turn over its litigation file to Wolf Haldenstein.

**\*8** SO ORDERED.

2004 WL 2370650 (E.D.N.Y.), Fed. Sec. L. Rep. P 93,028

Motions, Pleadings and Filings (Back to top)

.            1:01CV03285            (Docket)
(May. 22, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.