**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JUAN F., by and through his next friends Brian) | | |
| Lynch and Isabel Romero, on behalf of) | Case Number: 2:89cv00859 (AHN) | |
| themselves and all others similarly situated, et al ) | | |
| ) | | |
| Plaintiff ) | | |
| V. ) | | |
| ) | | |
| ) | | |
| JODI RELL, ET AL ) | | |
| ) | | |
| Defendants, ) | MARCH 3, 2006 | |

**REPLY MEMORANDUM FILED BY THE**
**STATE OF CONNECTICUT AND IN SUPPORT OF**
**BUDGET PROFFERED BY COURT MONITOR'S OFFICE**

**I.    INTRODUCTION**

On February 10, 2005, the Court Monitor submitted his budget to the Court for

Fiscal Year ending June 30, 2006.  The budget was the product of a substantial amount

of thought on the part of the Court Monitor, and reflected a reduction of nearly fifty

percent of the expenses contained in the budget submitted by the previous Court

Monitor, for the same fiscal year.

Prior to submitting his budget, the Court Monitor communicated both directly, and

indirectly through counsel, with both the Plaintiffs and Defendants in this matter to

1

discuss the line items.  There were meetings, letters and telephone conversations, and a fair amount of information was exchanged, with respect to many, if not all, of the line items.  All of the issues raised by the parties were resolved, save the two that are now contained in Defendant's Objection to Motion for Approval of Budget of the Office of Juan F., Court Monitor, dated February 28, 2006 ("Defendant's Objection").  Those issues are addressed below.

II.    **DISCUSSION**

Defendants have objected to the compensation and benefits to be paid to the Court Monitor and Ms. Joni Beth Roderick, on the basis that 1) they purportedly need historical information in order to assess the propriety of the present compensation and benefits, and 2) the present compensation and benefits are excessive.  Respectfully, Defendants are being somewhat disingenuous, and their argument ignores the fact that the Court Monitor's office (and its employees) is not a subdivision of the State.

Moreover, Defendants' Objection to the lease expense is unfounded and misrepresents the Court Monitor's position on this issue.

Simply stated, Defendants' Objections have no merit and should not be embraced by the Court.

A.    **Defendant's Request for Information**

The Court Monitor's Office ("Office") is an arm of this Court, akin to that of a special master, and the Court Monitor is answerable only to this Court.  Juan F., et al v. Weicker, et al, 37 F.3d 874, 880 (2d Cir. 1994).  The Office was created because of the serious failure by the State to address the needs and problems associated with our

2

children.  To that end, the Office has spent the last fifteen years working with the Plaintiffs and Defendants to ensure that the mandates established in the Consent Decree and more recently the Exit Plan are fulfilled and to assist  in  improving this flawed State agency.

Throughout its history, the Office has occupied a unique role of being part facilitator, part educator, part arbitrator and yes, on occasion, part dictator.  And, it has been necessary at times for the Court Monitor's Office to take positions adverse to one party or another.

In order to succeed at this critical job, the Office must maintain its integrity and independence.  The confidential information relevant to its structure and workings must not be made subject to public disclosure,[1] and its employees should not be made political pawns.  Contrary to Defendants' statement, the office is not subject to the Freedom of Information Act, 5 U.S.C. §551(1)(B).

Defendants are aware of the compensation and benefits to be paid to these employees for purposes of Fiscal Year 2006.  Indeed, they make no complaint about the level of information disclosed in the present budget.  Rather, they claim they need historical information to properly assess current compensation.  That is simply not true. As Defendants make abundantly clear by arguing that Mr. Mancuso's and Ms.

---

[1]   A Freedom of Information request has previously been filed against the Court Monitor's Office requesting the personnel records for Dr. Sirry.  Production was refused on the basis of the privacy of the information.  (See Exhibit 1 attached hereto).

Roderick's compensation is excessive, they have every ability to assess the current budget – <u>which is the only issue before this Court</u>.  The additional information they seek for prior years is not relevant to an assessment of whether the current budget is appropriate.  For example, reconciling what money Mr. Mancuso has been paid in the past with that which Defendants believe was permitted under his Detail, or asking for an accounting of his vacation and sick leave (<u>see</u> Defendants' Objection at ¶3), does not impact at all on the propriety of his present compensation.  The Court Monitor submits that Defendants' true agenda is not the one before this Court.

Moreover, Defendants are already aware of the compensation paid to Mr. Mancuso during his tenure because he reports it to the DCF Human Resources Division (who, in turn, provides it to the Comptroller's office) in conjunction with the processing of his state pension benefits.  Indeed, even if the State knew nothing more than his beginning salary (reported in his Detail) and current salary, it could assume there were periodic increases in the interim.  Why do they need more?  And, why do they need it in the interest of assessing the current budget?  It is noteworthy in this regard that the Court Monitor's counsel has stated to Defendants, through counsel, that he would be willing to discuss the disclosure of this sensitive, personnel information under the terms of a protective order, or some other means to insure its confidentiality.  Defendants have been unwilling to accept that proposition.  Instead, Defendants want this information so it can be publicly disclosed or, at least, want that option.  There is no reason this process should be politicized.  There is no reason the current employees of the Court Monitor's Office, whose morale has been seriously tested in the wake of

recent media attention directed to the Office given issues related to the previous Court Monitor, should now have to have their own personal issues aired publicly. There is no reason the integrity of the Court Monitor's Office should be undermined by politics. This Court is acutely aware of the compensation and benefits paid to the employees over the tenure of the Office. It is this Court's charge to run the Office. Frankly, Defendants should defer to the Court's exercise of its authority.

The Court Monitor also questions the sincerity of Defendants' request not only because of the obvious disconnect to the so-called need for the information, and the Defendants' present ability to challenge Mr. Mancuso's and Ms. Roderick's compensation, but also because of the total absence of any similar request made in the past. For the entire tenure which Mr. Mancuso and Ms. Roderick have been employees of the Court Monitor's Office, no one on behalf of Defendants made any inquiry as to the compensation or benefits paid to these two employees or requested any detail as to their job assignments or anything of the like.

**B.    Compensation and Benefits**

The compensation paid to these two employees is not excessive. The previous Court Monitor was authorized for an annual compensation of $200,000 as of June 21, 2005, and claimed additional benefits above and beyond that.[2] The very first Court Monitor ever appointed in this action some fifteen years ago was paid $85.00 per hour.

---

[2]   Putting aside the excesses that the former Court Monitor took from the Office, the State never objected to his annual rate based upon what was, in essence, part-time performance.

5

The current members of the Technical Advisory Committee (TAC) are paid $100 per hour. Mr. Mancuso's hourly rate, by contrast, is $72.00 per hour, based on a 40 hour week (or 58.00 per hour based on a 50 hour week).

The State also suggests somehow that Mr. Mancuso's compensation is in excess of that provided by his Detail. Copy of the Detail is attached as Exhibit 1 to Defendants' Objection. Since his employment with the Court Monitor's Office in 2001, Mr. Mancuso has received raises to both his compensation and an increase in the benefits provided to him. The Detail provides in Paragraph 6 that such adjustments may be made. That level of compensation and benefits has been provided without objection by the Defendants, or indeed, without any request for any information relevant to his compensation – even when his Detail was renewed in 2004. As noted, the Court should understand that because Mr. Mancuso is still a participant in the State pension plan, his compensation has been disclosed to DCF and the Comptroller's Office each and every year. Thus, the State can hardly feign ignorance that it was unaware of his compensation or the periodic increases.

The State argues that Ms. Roderick should be compensated at the range of somewhere between $66,567 to $85,383, plus benefits, as compared to her current compensation of $97,000, plus benefits.[3] Ms. Roderick has been a valued employee of the Court Monitor's Office from September 1, 1997, receiving periodic raises by her

---

[3] While the Court Monitor's position is defined differently today than it was with Mr. Sirry, the responsibilities are just as significant. Mr. Mancuso's day-to-day work responsibilities have increased, not decreased. Indeed, current discussions between the parties in this action will require even further work by the Office.

6

employer to the present level of compensation.  Defendants offer no rationale for why or how the Court Monitor's Office could simply decide to reduce that salary.  Nor does it offer any basis to show how State compensation may be relative to the compensation to which Ms. Roderick might be entitled to in the private industry.  In point of fact, Ms. Roderick is not a State employee; indeed, in many respects, she is supervising and analyzing the actions that her peers undertake in State service.  It makes no sense that that level of responsibility be compensated other than at her current level.

Mr. Mancuso and Ms. Roderick have, what some would say, the unenviable task of assessing, analyzing, reporting and working to improve the operations of a Department which, left to its own devices, was failing.  They are charged with bringing to fruition an Exit Plan crafted years ago and which is now in its penultimate stage. Their job responsibilities are not akin to whatever pigeonhole the State would have them fit in State practice.  Their responsibilities to this Court, the State of Connecticut and to its children are much greater, and in Mr. Mancuso's case, much closer to the persons and positions noted above. [4]

It is also notable that the State offers no explanation as to how reducing Mr. Mancuso's compensation from $150,000 to $115,000, (the correct calculation of the compensation adjustment reflected in Exhibit 2 of Defendant's Objection), would make sense from the perspective of an employer who has given raises to an employee or an

---

[4]    Moreover, the Court should be mindful of the fact that both employees have made substantial cuts in both their past and current benefits, to further reduce the level of the budget.  Enough is enough.

employee who has received raises.  Nor do they offer any explanation, having agreed

that the Court Monitor's Office could provide additional benefits or coverage to Mr.

Mancuso, as to how they can avoid the very agreement they signed.[5]

### C.    **Lease**

The second issue raised by the State is that the Court Monitor should reduce its

lease expense by moving into space provided by DCF.  There are several factors to be

considered in this regard.  First, when first offered by DCF on December 9, 2005, DCF

requested that the Court Monitor's Office operations be moved to the DCF's Main Office

at 505 Hudson Street, Hartford CT.  The Court Monitor rejected that offer because being

located within the actual facility of the Court Monitor would, in his estimation, undermine

the integrity and independence of the office.  Subsequently, on January 19, 2006, DCF

repeated its request, and this time indicated that alternative space would be provided by

the DCF.  The Court Monitor's response then and now was that if space was to be

provided that would allow them to maintain sufficient independence from DCF, and met

the operational needs of the Monitor' Office, he would consider it.  No detail as to the

nature of the space has been provided to him nor is any offered to the Court now.

---

[5]    Defendants also reference a letter recently sent to the Court by the Comptroller,
which Defendants seem to adopt by reference.  The Comptroller is not a part of this
proceeding, and although the Court Monitor's Office has responded to that letter, a
copy which is attached as Exhibit 2, her concerns are not concerns that should affect
this Court's decision.  If the Defendants want to raise those terms, they should do so
directly, and not hide behind someone who is not subject to this Court's jurisdiction,
and who no sooner wrote that letter to the Court than she provided it to local
newspapers.   These are important issues that should be resolved within this
proceeding, not in the media and not in a political forum.

Second, it is not as though the Court Monitor has the free ability to move.  The Court Monitor's existing lease for the property at 300 Church Street, Wallingford CT, is not due to expire until April 21, 2008.  The Landlord will undoubtedly not be willing to permit a vacancy of the Lease without a termination fee, unless an alternative tenant can be arranged.  Moreover, the expense of moving the operation of the Court Monitor must be taken into consideration, as well.  Those issues alone will probably undermine the efficacy of moving, but the Court Monitor remains willing to discuss this issue.

Third, this is not an objection to the current budget.  Even Defendants acknowledge that some lease termination fee would have to be due.  That Defendants might request that the Court Monitor consider his future location of the Office is a meritorious request and, as noted, one which the Court Monitor has embraced.  It does not change the present circumstance, however, as to what the current budget must cover.[6]

---

[6]    Moreover, the parties and the Court Monitor are currently considering additional review activities to address some of the issues in the Exit Plan.  This will entail additional staff, more space, and more time.  This certainly does not suggest a reduction in space requirements.

III.    **CONCLUSION**

The Court Monitor submits that his budget is appropriate.    He respectfully requests that it be approved.

RAYMOND MANCUSO,
COURT MONITOR
By:    /s/ James T. Shearin
       James T. Shearin – ct 01326
       Pullman & Comley, LLC
       850 Main Street
       P.O. Box 7006
       Bridgeport, CT  06601-7006
       Juris #47892
       Telephone:    (203) 330-2000
       Facsimile:    (203) 576-8888
       E-Mail        jshearin@pullcom.com

**CERTIFICATION**

Pursuant to Practice Book § 10-14, I hereby certify that a copy of the above was mailed or electronically delivered on this 3rd day of March, 2006 to all counsel and pro se parties of record.

Steven M. Frederick
Wofsey, Rosen, Kweskin & Kuriansky
600 Summer Street
Stamford, CT 06901
203-327-2300
203-967-9273 – fax
sfrederick@wrkk.com

Ann H. Rubin
Carmody & Torrance
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110
203-573-1200
203-575-2600
arubin@carmodylaw.com

Ira P. Lustbader, Esq.
Children's Rights, Inc.
404 Park Avenue South
11th Floor
New York, NY 10016
212-683-2210

Stephen Wizner, Esq.
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520-9090
203-432-4800

James P. Welsh
Director – Legal & Government Affairs
Department of Mental Retardation
460 Capitol Avenue
Hartford, CT 06106
860-418-6009
james.welsh@po.state.ct.us

Jane S. Scholl
Attorney General's Office
Administration Department
55 Elm Street
P.O. Box 120
Hartford, CT  06141-0120
860-566-2026

Susan T. Pearlman
Attorney General's Office
Child Protection
MacKenzie Hall
110 Sherman Street
Room 305
Hartford, CT 06105
860-808-6480
susan.pearlman@po.state.ct.us

Mr. Ray Mancuso
DCF Court Monitor's Office
300 Church Street - 4th Floor
Wallingford, CT 06492

/s/ James T. Shearin
James T. Shearin

Bridgeport/70556.1/JTS/590266v1

12