UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------x
JUAN F., *et al.*,                                  :
                Plaintiffs,      :
                                  :
   v.                                              :    CIVIL NO. H89-
                                  :    859 (AHN)
                                  :
M. JODI RELL, *et al.*,                             :
                                  :
                Defendants.      :
---------------------------------------------------------------x

### **STIPULATION REGARDING OUTCOME MEASURES 3 AND 15**

     WHEREAS, on May 5, 2008, pursuant to the Revised Monitoring Order in this action filed October 12, 2005, Plaintiffs asserted and notified Defendants of actual or likely noncompliance with the Revised Exit Plan of July 1, 2004, as modified July 11, 2006;

     WHEREAS, Plaintiffs' May 5, 2008 assertion of noncompliance is limited to Outcome Measures 3 and 15 in the Revised Exit Plan of July 1, 2004, as modified July 11, 2006;

     WHEREAS, the parties have met in good faith and have resolved the matters in Plaintiffs' May 5, 2008 assertion of noncompliance with the terms of this Stipulation Regarding Outcome Measures 3 and 15 ("Stipulation");

     THE PARTIES HEREBY STIPULATE AND AGREE, that Plaintiffs' May 5, 2008 assertion of noncompliance is hereby withdrawn, pursuant to the following terms:

**I.**    **Foster Care Recruitment and Retention Plans.**

    A. DCF, in conjunction with the Technical Advisory Committee ("TAC"), and with input from the DCF Court Monitor and Plaintiffs' Counsel, shall jointly develop revised approved statewide and area-based/regional foster care Recruitment and Retention Plans ("R&R Plans") effective for the fiscal year July 1, 2008 – June 30, 2009, and for the fiscal year July 1, 2009 – June 30, 2010, which R&R Plans shall require approval of the TAC. The R&R Plan for the fiscal year July 1, 2008 – June 30, 2009 shall require TAC approval no later than August 15, 2008, with ongoing collaboration with the TAC. The R&R plans shall be driven by data concerning the needs and placements of the foster care population and mapping of the capacity and preferences of the pool of foster parents, and shall include specific interim and annual performance recruitment and

retention goals.  The R&R plans shall include specific strategies to increase responsiveness and support to foster parents at all stages of recruitment, licensing, placement and throughout foster parents' involvement with the DCF system.  The R&R Plans shall also include a specific schedule for redesigning the delivery of "treatment foster care" or "therapeutic foster care" that provides for the recruitment, retention, training, payment and service support of foster parents to provide care for foster children with therapeutic needs that can be served with the child living in a family environment.

B. The goals in the R&R Plans shall include, at a minimum, the following: (1) a statewide net gain of 350 foster family homes by June 30, 2009; and (2) an additional statewide net gain of 500 foster family homes by June 30, 2010.

II. **Automation of Administrative Case Reviews and Treatment Planning Conferences.**  In conjunction with the DCF Court Monitor, within 180 days of the date of entry of this Stipulation, DCF shall develop the capacity to electronically store and generate child-specific and aggregate reports concerning the information collected and documented at each child's Administrative Case Review ("ACR") and Treatment Planning Conference ("TPC").  The functionalities shall include the capacity (1) to generate reports that are child-specific, so that information, obligations and implementation of treatment plan items can be tracked over time; and (2) to generate aggregate reports for purposes of additional monitoring under the *Juan F.* Exit Plan and for DCF management and quality assurance functions.  The DCF Court Monitor shall have the authority to make any necessary and reasonable extensions of the required timeframe for completing the requirements of this Section.

III. **Independent Expert Review of the Utilization of Congregate Care Facilities.**  DCF, in conjunction with the TAC, and with input from the DCF Court Monitor and Plaintiffs' Counsel, shall undertake a review and assessment of the current models and utilization of congregate care (non-family) placements, including but not limited to group homes (all levels), SAFE Homes, STAR Homes, residential placements and DCF facilities.  The purpose of this review and assessment will be to evaluate DCF's overall ability to provide placements in the least restrictive, most family-like setting that meet children's needs.  The review and assessment shall include, without limitation, an overview of DCF's current policies and procedures, an analysis of the implementation of policies and procedures for approving placements conducted by the Administrative Service Organizations (ASO's), a review of relevant data and information, interviews and site visits as appropriate, and recommendations for improvement and/or modifications of existing policies, procedures, and/or models.  Within 270 days of the date of entry of this Stipulation, the DCF and the TAC shall issue a joint report, including any recommendations for improvement and/or modifications of existing policies,

procedures and/or models, and/or for phasing out the use of any types or categories of congregate care.  If DCF and the TAC are unable to agree on any aspects of this report, including any recommendations for improvement or modification, the TAC shall provide an Addendum setting forth the TAC's recommendations and any areas of disagreement with DCF.  In the event an Addendum is issued by the TAC, the parties shall address the items in the Addendum under the same procedures and timelines for dispute resolution pursuant to Section III.B. of the Revised Monitoring Order in this action filed October 12, 2005.

IV.  **Practice Model.**  Within 90 days of the date of entry of this Stipulation, DCF shall, in conjunction with the TAC, engage an independent consultant to assist in the creation and implementation of a Practice Model, an example of which is attached as Exhibit A hereto. If the TAC objects to the consultant selected by DCF, the parties shall address the issue under the same procedures and timelines for dispute resolution pursuant to Section III.B. of the Revised Monitoring Order in this action filed October 12, 2005.  An implementation plan shall set forth the timeframes for development, training, full implementation and accountability with respect to the Practice Model, which implementation activities shall begin no later than November 1, 2008.

V.  **Service Needs Reviews.**

   A.  Service Needs Reviews: Authority and Purposes

   Service Needs Reviewers shall conduct in-depth Service Needs Reviews of the cases of all children who fall within one or more of the eight categories listed in Section V.B. below as of July 1, 2008.[1]

   The Service Needs Review process shall be overseen by the DCF Court Monitor.  The DCF Court Monitor will select and supervise the Service Needs Reviewers, which may include staff from the DCF Court Monitor's office, DCF staff, TAC staff and other consultants hired specifically for this purpose.  All Service Needs Reviewers shall be trained and supervised by the DCF Court Monitor and shall have appropriate clinical expertise and experience.

   It is the express intent of the parties that the DCF Court Monitor shall have the authority to modify or substitute alternatives to the processes and procedures outlined in this Section V that serve the purposes of the Service Needs Reviews.  The DCF Court Monitor shall provide the parties with proposed Service Needs Review processes and procedures, including any modification or alternatives to be used, by August 15, 2008.  The parties shall have 10 days thereafter to provide comment to the DCF Court

---

[1] These eight categories will hereinafter be referred to as "Target Cohorts."  They shall be identified, for purposes of the Service Needs Reviews, as a specific one-time population or cohort.

Monitor. By September 1, 2008, the DCF Court Monitor shall provide the final Service Needs Review processes and procedures to the parties, which shall be binding.

The purposes of the Service Needs Reviews are to identify the following for each child in the Target Cohorts: (a) the particular child and family circumstances; (b) the barriers that exist to a permanent exit from DCF custody, placement in an appropriate, least restrictive, most family-like setting while in DCF custody, and meeting any unmet service needs required by Outcome Measure 15; (c) the specific steps that must be taken to remove these barriers and achieve appropriate results for the child; and (d) through periodic follow-up reviews, the degree to which these steps have been implemented and appropriate results for the child have been achieved.

B. Target Cohorts

The Target Cohorts shall include the following:

1. All children age 12 and under placed in any non-family congregate care settings (excluding children in SAFE Homes for less than 60 days);

2. All children who have remained in any emergency or temporary facility, including STAR homes or SAFE homes, for more than 60 days;

3. All children on discharge delay for more than 30 days in any non-family congregate care setting, with the exception of in-patient psychiatric hospitalization;

4. All children on discharge delay for more than seven days that are placed in an inpatient psychiatric hospital;

5. All children with a permanency goal of Another Planned Permanent Living Arrangement ("APPLA");

6. All children with a permanency goal of adoption who have been in DCF custody longer than 12 months for whom a petition for termination of parental rights (TPR) for all parents has not been filed, and no compelling reason has been documented for not freeing the child for adoption;

7. All children with a permanency goal of adoption and for whom parental rights have been terminated (except those who are living in an adoptive home with no barrier to adoption and are on a path to finalization); and

4

8. All children with a permanency goal of reunification who have been in DCF custody longer than 12 months and have not been placed on a trial home reunification, or have not had an approved goal change.

C. <u>Service Needs Review Process.</u>

The Service Needs Review process described below shall be carried out for each child in the Target Cohorts, and all processes below shall be subject to the DCF Court Monitor's final Service Needs Review processes and procedures as set forth in Section V.A. above.

1. <u>Initial Service Needs Review</u>. An Initial Service Needs Review shall be completed by January 31, 2009. By September 1, 2008, the DCF Court Monitor shall develop a protocol to be used in each Initial Service Needs Review with input from DCF, Plaintiffs and the TAC.

   a. This Initial Service Needs Review shall include a complete file review by the Service Needs Reviewer, in consultation with the child's DCF worker and supervisor, and the convening of a Case Conference for each child in the Target Cohorts. The Case Conference must include the documentation of existing barriers to a permanent exit from DCF custody; placement in an appropriate, least restrictive, most family-like setting while in DCF custody; meeting any unmet service needs as required by Outcome Measure 15; and the identification of strategies to address these specific barriers.

   b. The Initial Service Needs Review shall include a determination of whether a referral shall be made to a Specialized Case Manager (as set forth below in Section V.C.3.), and, if a referral is made, the referral shall take place within 30 days of the Initial Service Needs Review.

   c. In the event that any unmet needs are identified as required by Outcome Measure 15, the results of the Initial Service Needs Reviews shall be promptly shared with any attorney assigned to the child and any attorney assigned to the child's parent(s).

2. <u>90-Day Follow-Up Reviews.</u>

   a. 90-Day Follow-Up Reviews by the Service Needs Reviewer shall be conducted every 90 days after the date of the child's Initial Service Needs Review to assess and discuss case progress, determine needed next steps, and record case status for entry into the data collection database described in Section V.C.5. below.

       These Reviews shall consist of an in-person meeting attended by the Service Needs Reviewer, the DCF worker, the DCF supervisor and the Specialized Case Manager (if a referral is made), and, if appropriate, the conducting of another Case Conference.

   b. 90-Day Follow-Up Reviews shall be conducted every 90 days until the child's needs, as required by Outcome Measure 15, are met.

   c. If referral to a Specialized Case Manager has not been made, each 90-Day Follow-Up Review shall include a determination of whether a referral shall be made to a Specialized Case Manager (as set forth below in Section V.C.3.), and, if a referral is made, the referral shall take place within 10 days of the 90-Day Follow-Up Review.

   d. In the event that any unmet needs are identified as required by Outcome Measure 15, the results of any 90-Day Follow-Up Reviews shall be promptly shared with any attorney assigned to the child and any attorney assigned to the child's parent(s).

   e. Through a process approved and overseen by the DCF Court Monitor, the 90-Day Follow-Up Reviews shall not be necessary for any of those children in the Target Cohorts set forth in Section V.A. for whom the completed Initial Service Needs Review did not document any unmet needs as required by Outcome Measure 15.

3. <u>Specialized Case Manager Function</u>. The function of a Specialized Case Manager—independent of the child's case worker, supervisor or Special Needs Reviewer—shall be established by DCF, with input from the TAC and the DCF Court Monitor, to implement the recommendations of the Service Needs Review in such cases where heightened implementation support is determined to be necessary by the Service Needs Review or Follow-Up Review. The Specialized Case Manager shall have authority to make decisions, which shall be implemented, concerning children in the Target Cohorts. Each Specialized Case Manager shall have oversight over no more than 10 children (or as may be modified by the DCF Court Monitor to meet the requirements of this Section V), and shall engage in leading a "teaming" approach with the child's DCF case manager, DCF supervisor and other relevant stakeholders concerning the child, including, but not limited to, the child's/parents' attorney(s), the child (if of appropriate age), and the child's educational surrogate (if applicable). In teaming the case and implementing the recommendations of the Service Needs Review, the Specialized Case Manager shall ensure that the following activities occur as appropriate for each child:

    a. Convene meetings, access funding and make independent decisions in order:

        (i) To determine the continuing appropriateness and effectiveness of the child's permanency goal and to seek court-approved change of the goal, if appropriate; and

        (ii) To determine the continuing appropriateness and effectiveness of the services being provided to the child; whether new or different services are necessary for the child; and, if so, by whom and when they will be provided;

    b. Partner with the area/statewide Independent Living staff and Central Office Adolescent Service staff to determine whether adequate independent living services and plans are being provided for all children age 14 and older;

    c. Evaluate the continuing appropriateness and effectiveness of services to biological parents and relatives, and determine whether new or different services are necessary to assist the biological parents and relatives in achieving the child's permanency goal;

    d. Consult with public and private professionals and take all steps necessary to ensure the provision of services for achieving permanency, achieving placement in the least restrictive, most family-like placement, and addressing any identified unmet needs as required by Outcome Measure 15; and

    e. No sooner than 60 days prior to discharge, regardless of the discharge destination, convene a special discharge planning meeting that shall be held to ensure that appropriate services and plans are in place to ensure a successful discharge.

4. DCF may contract out any or all of the duties and functions of the Specialized Case Managers to one or more private providers which have a demonstrated capacity to perform the specific duties and functions of the Specialized Case Manager, and which have a proven track record of achieving positive permanency, placement and service delivery outcomes for children.  However, any such contracts shall not alter any of the legal obligations of Defendants under this Stipulation, the Revised Exit Plan of July 1, 2004 (as modified July 11, 2006), or other governing orders in this action.

     5.   <u>Service Needs Review Data Collection and Analysis</u>.  The DCF Court Monitor shall develop a data collection tool with input from DCF, Plaintiffs and the TAC, which shall be utilized by the Service Needs Reviewer to systematically collect and document for each child's case and for aggregate reporting and analysis: (a) the identified barriers to moving out of the corrective action category; (b) the Service Needs Reviewer's specific recommendations to address the barriers; and (c) the implementation status of the recommendations.

**VI.   Prospective Placement Restrictions.**  The following placement standards shall be implemented immediately:

A. Beginning 90 days after the date of entry of this Stipulation, no child entering any emergency or temporary facility, including STAR homes or SAFE homes, shall remain in such facility for more than 60 days. Beginning 90 days after the date of entry of this Stipulation, an exception to the 60-day limit may be granted for an individual child for a one-time maximum of 20 days if the Area Director (or functional equivalent) certifies in writing that an appropriate placement has been identified and that a transition to that placement is underway and necessary. Beginning 180 days after the date of entry of this Stipulation, an exception to the 60-day limit may be granted for an individual child for a one-time maximum of 10 days if the Area Director (or functional equivalent) certifies in writing that an appropriate placement has been identified and that a transition to that placement is underway and necessary. Beginning 270 days after the date of entry of this Stipulation, an exception to the 60-day limit may be granted for an individual child for a one-time maximum of 5 days if the Area Director (or functional equivalent) certifies in writing that an appropriate placement has been identified and that a transition to that placement is underway and necessary.

B. Beginning 90 days after the date of entry of this Stipulation, no child shall be placed in more than one emergency or temporary facility, including STAR Homes or SAFE Homes, within any 12-month period.  An exception to the limit on multiple placements within any 12-month period may occur for an individual placement episode for a maximum of 5 days. The exception shall only apply to children returning from runaway status and children facing a direct threat to their safety, or children who are a threat to the safety of others, where immediate removal is necessary.  An additional exception to the limit on multiple placements within any 12-month period is if a child's behavior has changed so significantly that placement for the purposes of assessment is critical for the determination of an appropriate placement, and the Area Director (or functional equivalent) certifies in writing that the assessment is essential for an appropriate placement.  In such cases, there may be a single additional placement in an emergency or temporary facility, including SAFE Homes or STAR Homes, for up to a maximum of 15 days.

C. Beginning 90 days after the date of entry of this Stipulation, no child shall remain in any hospital or in any in-patient status beyond the determination that the child is appropriate for discharge (i.e., on discharge delay). The only exception shall be in such cases, upon the express written approval of the DCF Commissioner, the Chief of Staff, the Bureau Chief for Child Welfare, the Bureau Chief for Behavioral Health, or the Director of Foster Care (or the functional equivalent of these senior management officials), based upon such senior management official's determination, that an appropriate placement has been identified that is not currently available and any other alternative for a placement move will be contrary to that child's best interests, in which case the child may remain in the hospital, emergency room or any in-patient status for a single additional period of 10 days.

D. Beginning 90 days after the date of entry of this Stipulation, no child age 12 and under shall be placed in a congregate non-foster family home setting, except for children with exceptional needs that cannot be met in any other type of placement and upon the express written approval of the DCF Commissioner, the Chief of Staff, the Bureau Chief for Child Welfare, the Bureau Chief for Behavioral Health or the DCF Medical Director (or the functional equivalent of these senior management officials). Such approval shall be based on such senior management official's certification based on a determination that the child's needs can only be met in that specific facility, including a description of the services available in the facility to address the individual child's needs.

E. Beginning 90 days after the date of entry of this Stipulation, no child over the age of 12 shall be placed in any congregate non-foster family setting without express written approval by the Bureau Chief for Behavioral Health (or functional equivalent). Such approval shall be based on his or her certification and specific findings that the child's needs can be met in that specific facility, including a description of the services available in the facility to address the individual child's needs, and that the facility is the least restrictive placement to meet this child's needs.

F. Beginning 30 days after the date of entry of this Stipulation, no child shall be given a goal of Another Planned Permanent Living Arrangement ("APPLA") without the written approval of the DCF Commissioner, the Chief of Staff, or the Bureau Chief for Child Welfare (or the functional equivalent of these senior management officials). Such approval shall be based on such senior management official's certification based on a personal determination that the limitations of the use of APPLA are applicable to that individual child, based on the written policy (attached as Exhibit B to this Stipulation), with a description of why the goal is appropriate for that child.

**VII.** **Health Care.**

A. <u>EPSDT Screens</u>.  Within 30 days of entry of this Stipulation, DCF shall identify all children in the 6 categories below, and within 90 days of the entry of this Stipulation, DCF shall ensure the provision of the required dental, medical, mental health, vision, hearing and developmental screens for all children in the 6 categories below:

1. Children who have not received a required initial or periodic dental screen under the federal Early Periodic Screening Diagnosis and Treatment (EPSDT) statutory program, state law and DCF policy, and for whom the required screen is more than 60 days overdue;

2. Children who have not received a required initial or periodic medical screen under the federal Early Periodic Screening Diagnosis and Treatment (EPSDT) statutory program, state law and DCF policy, and for whom the required screen is more than 60 days overdue;

3. Children who have not received a required initial or periodic mental health screen under the federal Early Periodic Screening Diagnosis and Treatment (EPSDT) statutory program, state law and DCF policy, and for whom the required screen is more than 60 days overdue;

4. Children who have not received a required initial or periodic vision screen under the federal Early Periodic Screening Diagnosis and Treatment (EPSDT) statutory program, state law and DCF policy, and for whom the required screen is more than 60 days overdue;

5. Children who have not received a required initial or periodic hearing screen under the federal Early Periodic Screening Diagnosis and Treatment (EPSDT) statutory program, state law and DCF policy, and for whom the required screen is more than 60 days overdue; and

6. Children who have not received a required initial or periodic developmental screen under the federal Early Periodic Screening Diagnosis and Treatment (EPSDT) statutory program, state law and DCF policy, and for whom the required screen is more than 60 days overdue.

B. <u>Health Care Treatment</u>.  DCF shall ensure that children promptly receive all medically necessary treatment for any needs identified at required EPSDT screens and any needs identified in between such screens.  Any health care service need (dental, medical, mental health, vision, hearing, developmental or other related health services) for which the availability of an approved Medicaid provider is a barrier to service delivery shall be documented in the child's record in LINK.  DCF shall promptly ensure service delivery for children's health care service needs (dental, medical, mental health, vision, hearing, developmental or other related health

services), including, but not limited to, the purchase of such services on the open market at market rates by a qualified health professional.

C. <u>Improved Health Care Tracking</u>. Within 120 days of entry of this Stipulation, DCF shall work with the Connecticut Department of Social Services (DSS) to create a computerized unique identifier for DCF children and families, so that data concerning the provision and payment of health care services (medical, dental, mental health, vision, hearing, developmental and other related health services) for individual DCF involved children enrolled in the HUSKY or Medicaid fee-for-service program can be tracked, and so that such data for all DCF-involved children can be aggregated and reported.

VIII. **Treatment Planning.** DCF, in conjunction with the TAC, and with input from the DCF Court Monitor and Plaintiffs' Counsel, shall undertake a review and assessment of the current policies, procedures and practices related to the creation of required Treatment Plans for children, including any efforts underway or planned by DCF to improve the quality of Treatment Plans for children, and any recommendations for improvement and/or modifications of existing DCF policies, procedures and/or models. Within 90 days of the date of entry of this Stipulation, DCF and the TAC shall issue a joint report. If DCF and the TAC are unable to agree on any aspects of the report, including recommendations for improvement and/or modification of existing DCF policies, procedures and/or models, the TAC shall provide an Addendum setting forth the TAC's recommendations and any of the TAC's areas of disagreement with DCF. In the event an Addendum is issued by the TAC, the parties shall address the items in the Addendum under the same procedures and timelines for dispute resolution pursuant to Section III.B. of the Revised Monitoring Order in this action filed October 12, 2005.

IX. **Interim Performance**

A. <u>Baseline Reductions.</u> Upon the completion of the Initial Service Needs Reviews in Section V, the DCF Court Monitor shall issue a validated report identifying, at a point in time as close as reasonably possible to the completion of the Initial Service Needs Reviews, a baseline of the total number of children in each of the categories in Section V.B.1–8 of this Stipulation. The parties, with input from the TAC and the DCF Court Monitor, shall then meet and confer for a period of no more than 30 days, unless agreed to by the parties, to identify and agree upon required percentage reductions off of some or all of the baselines, and a timeline for achieving such reductions, which shall become part of this Stipulation. If the parties cannot agree upon the baseline reductions and timelines, the parties shall proceed under the same procedures and timelines for dispute resolution pursuant to Section III.B. of the Revised Monitoring Order in this action filed October 12, 2005.

11

B. Health Care.

1. Dental Service Needs. By the quarter ending December 31, 2008, Defendants shall have a target/goal of reaching 85% or better on the "Dental" service needs component of the Outcome Measure 15 methodology. By the quarter ending March 31, 2009, and for each quarter thereafter, Defendants shall have a target/goal of reaching 90% or better on the "Dental" service needs component of the Outcome Measure 15 methodology.

2. Mental Health Service Needs. By the quarter ending December 31, 2008, Defendants shall have a target/goal of reaching 85% or better on the "Mental Health needs" service needs component of the Outcome Measure 15 methodology. By the quarter ending March 31, 2009, and for each quarter thereafter, Defendants shall have a target/goal of reaching 90% or better on the "Mental Health" service needs component of the Outcome Measure 15 methodology.

C. Contracting or Providing Services to Meet the Permanency Goal. By the quarter ending December 31, 2008, Defendants shall have a target/goal of reaching 85% or better on the "DCF Case management – Contracting or Providing Services to Achieve the Permanency Goal" component of the Outcome Measure 15 methodology. By the quarter ending March 31, 2009, and for each quarter thereafter, Defendants shall have a target/goal of reaching 90% or better on the "DCF Case management – Contracting or Providing Services to Achieve the Permanency Goal" component of the Outcome Measure 15 methodology.

D. Goals for Increasing Family-Based Placements. The DCF Court Monitor shall validate and report a baseline of the percentage of children in DCF custody who are placed in a family-based (non-congregate) placement, for the fiscal year ending June 30, 2008. The target/goal for the fiscal year ending June 30, 2009 shall be to increase this baseline by 7%, and a target/goal of an additional annual 3% increase each fiscal year for the duration of this Stipulation.

E. Treatment Planning.

1. Action Steps to Achieving Goals Identified. The baseline for improvement shall be established by the results reported in the *Juan F. v. Rell* Exit Plan Quarterly Report for the quarter ending March 31, 2008. By the quarter ending December 31, 2008, Defendants shall have a target/goal of performance improvement of 15 % or better on the "Action Steps to Achieving Goals Identified" treatment planning component of the Outcome Measure 3 methodology. For each quarter thereafter, Defendants shall have a target/goal of performance improvement of 10% or better over the preceding quarter until the

12

       performance has reached 90% or better on the "Action Steps to Achieving Goals Identified" treatment planning component of the Outcome Measure 3 methodology, after which the target/goal shall remain at 90% or better.

2. <u>Determining the Goals/Objectives</u>.  December 31, 2008, Defendants shall have a target/goal of reaching 85% or better on the "Determining the Goals/Objectives" treatment planning component of the Outcome Measure 3 methodology.  By the quarter ending March 31, 2009, and for each quarter thereafter, Defendants shall have a target/goal of reaching 90% or better on the "Determining the Goals/Objectives" treatment planning component of the Outcome Measure 3 methodology.

3. <u>Planning for Permanency</u>.  By the quarter ending December 31, 2008, Defendants shall have a target/goal of reaching 85% or better on the "Planning for Permanency" treatment planning component of the Outcome Measure 3 methodology.  By the quarter ending March 31, 2009, and for each quarter thereafter, Defendants shall have a target/goal of reaching 90% or better on the "Planning for Permanency" treatment planning component of the Outcome Measure 3 methodology.

4. <u>Strengths/Needs/Other Issues</u>.  By the quarter ending December 31, 2008, Defendants shall have a target/goal of reaching 85% or better on the "Strengths/Needs/Other Issues" treatment planning component of the Outcome Measure 3 methodology.  By the quarter ending March 31, 2009, and for each quarter thereafter, Defendants shall have a target/goal of reaching 90% or better on the "Strengths/Needs/Other Issues" treatment planning component of the Outcome Measure 3 methodology.

5. <u>Progress</u>.  By the quarter ending December 31, 2008, Defendants shall have a target/goal of reaching 85% or better on the "Progress" treatment planning component of the Outcome Measure 3 methodology.  By the quarter ending March 31, 2009, and for each quarter thereafter, Defendants shall have a target/goal of reaching 90% or better on the "Progress" treatment planning component of the Outcome Measure 3 methodology.

**X.** **Duration of Stipulation.** Sections VIII and IX.E. of this Stipulation shall remain effective and enforceable until Defendants sustain performance under Outcome Measure 3 at 90% or better for two consecutive quarters.  All other provisions in this Stipulation shall remain effective and enforceable until Defendants sustain performance under Outcome Measure 15 at 80% or better for two consecutive quarters.

XI. **Monitoring.** The DCF Court Monitor shall undertake appropriate measures to collect data, validate and report on Defendants' performance within the terms of this Stipulation.

XII. **Enforceability.** It is the express intent of the parties that this Stipulation shall only be enforceable, by its terms, in this action—*Juan F., et al., v. M. Jodi Rell, et al.*, CA H89-859 (AHN)—and that this Stipulation does not create any separately enforceable obligations outside of this action.

SO STIPULATED BY THE PARTIES, JULY ___, 2008:

_____    _____
Steven M. Frederick                Marcia Robinson Lowry
Federal Bar No. ct08743            Federal Bar No. ct04688
sfrederick@wrkk.com                mlowry@childrensrights.org
Wofsey, Rosen, Kweskin             Ira P. Lustbader
    & Kuriansky, LLP               Federal Bar No. ct23551
600 Summer Street                  ilustbader@childrensrights.org
Stamford, CT 06901-1490            Children's Rights
Tel (203) 327-2300                 330 Seventh Avenue, 4th Floor
Fax (203) 967-9273                 New York, N.Y. 10001
                                   Tel (212) 683-2210
                                   Fax (22) 683-4015

                                   FOR PLAINTIFFS

                                   _____
                                   Ann H. Rubin, Esq.
                                   Federal Bar No. ct04486
                                   arubin@carmodylaw.com
                                   Carmody & Torrance LLP
                                   195 Church Street
                                   New Haven, CT 06590-1950
                                   Tel (203) 777-5501

                                   FOR DEFENDANTS

REVIEWED AND APPROVED:

_____    _____
RAYMOND MANCUSO, DCF COURT MONITOR          DATE

SO ORDERED:

_____    _____
HON. ALAN H. NEVAS, SENIOR U.S. DISTRICT JUDGE    DATE